MARBLE COMPANY *v.* HARVEY.

(*Knoxville.* November 18, 1892.)

1. CORPORATIONS, PRIVATE. *Purchase of stock of other corporations invalid.*

A corporation cannot lawfully become the owner of shares in any other corporation "unless by power specifically granted by its charter or necessarily implied in it." The unauthorized purchase by one corporation of the shares of another corporation is *ultra vires* and void. No suit can be maintained by either party in furtherance or affirmance of such void contract, not even by a party who has fully executed the contract on his own part. Such illegal contract creates no estoppel upon either party.

Cases cited and approved: 131 U. S., 389; 139 U. S., 60.

Cited and distinguished: Barrow *v.* Turnpike Co., 9 Hum., 303; Heiskell *v.* Chickasaw Lodge, 87 Tenn., 668; 63 N. Y., 62; 96 U. S., 267, 312.

2. SAME. *Same. Case in judgment.*

The complainant company is a corporation organized under the laws of Ohio "for the purpose of cutting, dressing, manufacturing, selling, and disposing of marble, stone, slate, granite, and other substances, with such other incidental and necessary powers essential to carry on said business." It purchased of defendant, Harvey, twenty-five shares of the stock of the "McMillin Marble Company," a Tennessee corporation engaged in the marble business. Complainant paid the full consideration for these shares. Harvey transferred the shares to a trustee named by complainant, and for its benefit. As part of this contract, Harvey agreed to pay off one-half of certain liabilities existing against the "McMillin Marble Company." The complainant having been compelled to pay off these liabilities in full, brought this suit to recover back one-half the amount from Harvey.

*Held:* Complainant's contract with defendant for the purchase of the shares of the "McMillin Marble Company" is *ultra vires* and absolutely void, complainant's charter conferring upon it no power to make such purchase; and that this suit is in furtherance and affirmance of said illegal and void contract, and cannot, therefore, be maintained.

*Question reserved:* Could complainant repudiate the contract and tender back to defendant the shares of stock delivered under it, and then recover of defendant the money paid for the shares?

FROM KNOX.

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

GREEN & SHIELDS for Marble Company.

W. C. KAIN for Harvey.

LURTON, J.   The complainant is an Ohio corporation, and was organized under the general incorporation law of that State "for the purpose of cutting, dressing, manufacturing, selling, and disposing of marble, stone, slate, granite, and other substances, with such other incidental and necessary powers essential to carry on said business." This company, with its place of business in Cincinnati, Ohio, has acquired the entire issue of shares made by a Tennessee incorporation, engaged in a similar business and under a similar charter, and known as the "McMillin Marble Company." Its last acquisition of shares was under a contract with the defendant, who was president of the Tennessee company, and who owned, at the time of the sale, twenty-five shares, being one half of

the entire stock of the company. These shares he conveyed to a trustee, selected by the purchasing corporation, for its use and benefit. The consideration for the sale was the payment of six thousand dollars, the defendant assuming and agreeing to personally pay off and discharge one-half of all liability which might be fixed upon the McMillin Marble Company as a result of certain suits against that company then pending in the Courts of this State.

The bill alleges, and the evidence establishes, that the complainant company has been compelled, in order to protect the property of the McMillin Marble Company, to pay out about the sum of three thousand dollars in settlement and satisfaction of the claims in suit at time of its contract with defendant.

The relief sought is a decree against defendant for one-half this sum, being the proportion he agreed to pay under his agreement of sale.

The defense is that the contract of sale to the complainant company was unlawful and void; that is to say, that the purchase of these shares was outside the objects of its creation as defined in its charter, and is therefore such a contract as is not only voidable, but wholly void and of no legal effect; that it is not a case of excessive use of a power granted, but that no power whatever was conferred to deal in or hold the shares of another corporation; that the suit is one upon a void contract and in furtherance of it, and that

it should not be entertained by a Court of law or equity.

"The rule in the United States," says Mr. Green, the American editor of Brice's Ultra Vires, "is that a corporation cannot become a stockholder in another corporation unless by power specifically granted by its charter or necessarily implied in it." Green's Brice's Ultra Vires, 91, note *b*, and American cases cited.

"A corporation has no implied right to purchase shares in another company for the purpose of controlling its management; nor may a corporation hold shares in another company as an investment, unless this be the usual method of carrying on its own proper business. A corporation must carry on its business by its own agents, and not through the agency of another corporation. It is clear also that a corporation has no implied right to speculate in shares, unless this be the kind of business for which the company was formed." 1 Morawetz on Corporations, Sec. 431.

The evidence shows that the declared purpose of complainant in buying in the shares held by the defendant was to enable it to manage and control the business of the Tennessee company in the interest of the Ohio company.

There is no pretense that it had any express power to purchase shares in another company, and it is too clear to need argument or further citation of authority, that it had no implied authority to purchase and hold shares, either in its own

name or in that of a trustee, for the purpose of controlling another corporation. That these corporations were engaged in a similar business does not help the case. The purpose and intent in granting a charter is, that the corporation shall carry on its business through its own agents, and not through the agency of another corporation. The public policy of this State will not permit the control of one corporation by another. Especially is this true when a foreign corporation thus undertakes to control and swallow up a domestic company. Such control of one corporation by another in a like business is unlawful, as tending to monopoly.

The result is, that this purchase of shares for the express object of controlling and managing another corporation was *ultra vires*, and, therefore, unlawful and void. Being void, it was of no legal effect, and no rights result from it enforceable by or through the Courts of the State, when such aid is invoked in furtherance of the unlawful agreement.

But it has been insisted very earnestly by the able and learned counsel for complainant, that where the contract has been fully executed by the plaintiff, the defendant should not be permitted to invoke such defense to a suit brought to compel performance; that to permit such a defense would work injustice, and enable defendant to repudiate his liability while holding on to the price he has received. There are cases where, the contract be-

ing fully executed on both sides, the Court, in the interest of justice, has refused to aid either in obtaining a rescission. *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 62, is one of this class.

So there are cases where the defense of *ultra vires* has not been entertained when the defect was in the *mode* of executing the contract or in the *power of the agent.*

So there are many cases holding the party relying upon the defense of *ultra vires* to an accountability for the benefits received. Green's Brice's Ultra Vires, 717, and note at end of chapter.

Again, there are cases where the Courts have refused to entertain suits to recover property from corporations which is held in excess of charter capacity. In such cases the Courts have held that the defect in power could not be set up in a collateral way, and that the State only could complain of such violation. To this effect were our own cases of *Barrow* v. *Turnpike Co.*, 9 Hum., 303, and *Heiskell* v. *Chickasaw Lodge*, 87 Tenn., 668.

The question here is not like any ·of these. The complainant sues upon its contract, and, in affirmance of it, seeks to have the defendant perform an agreement which sprang from, and was collateral to it. It has received the shares it purchased, and holds on to them. It simply asks that the defendant be further compelled to perform his contract by contributing, in accordance with his agreement, his proportion of the liability paid off by complainant in protection of the property

of the McMillin Marble Company. The suit is clearly in furtherance of the original, unlawful, and void contract. That the contract has been executed by the plaintiff does not make it lawful or entitle it to an enforcement of it.

This proposition was very plainly put in *Pittsburg, etc.,* v. *R. & H. Bridge Co.,* where it was stated, as a result of all the previous decisions of that Court upon this subject, "that a contract made by a corporation, which is unlawful and void because beyond the scope of its corporate powers, does not, by being carried into effect, become lawful and valid; but the proper remedy of the party aggrieved is by disaffirming the contract, and suing to recover, as on a *quantum meruit,* the value of what the defendant has actually received." 131 U. S., 389.

The case of *Central Transportation Co.* v. *Pullman Car Co.* is an exceedingly interesting case, as it involved a consideration of the circumstances under which a defendant may interpose the defense of *ultra vires,* notwithstanding full performance by the plaintiff.

In that case, the Central Transportation Company had leased and transferred all of its property of every kind to the defendant company, which was engaged in a similar and competitive business. The lessee company undertook to pay all of the debts of the lessor company, and to pay to it annually the sum of $264,000 for a term of ninety-nine years. Possession was taken, and

the installments paid for a number of years. The
suit was for a part of the installment for the last
year before suit. The defense of *ultra vires* was
interposed and sustained, the Court holding that
the sale was unauthorized and in excess of the
power of the selling company. It was urged for the
plaintiff, as in this case, that, even if the contract
was , void, because *ultra vires* and against public
policy, yet that, having been fully executed on
the part of the plaintiff, and the benefits of it re-
ceived by the defendant for the period covered by
the declaration, the defendant was estopped to set
up the invalidity of the contract as a defense to
an action to recover the compensation agreed on
for that period.

After reviewing its own decisions upon this
branch of the case, that Court said:

"The view which this Court has taken of the
question presented by this branch of the case,
and the only view which appears to us con-
sistent with legal principles, is as follows: A
contract of a corporation which is *ultra vires*
in the proper sense—that is to say, outside the
object of its creation as defined in the law of its
organization, and therefore beyond the powers con-
ferred upon it by the Legislature—is not voidable
only, but wholly void, and of no legal effect. The
objection to the contract is not merely that the
corporation ought not to have made it, but that
it could not make it. The contract cannot be
ratified by either party, because it could not have

been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the Legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But where the contract is beyond the powers conferred upon it by existing law, neither the corporation nor the other party to the contract can be estopped, by assenting to it or by acting upon it, to show that it was prohibited by law.

"A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the Courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as it could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for property or money which

it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract." 139 U. S., 60.

This seems to us to fully and clearly state the rule. The passage cited by counsel from *Railway Co.* v. *McCarthy*, 96 U. S., 267, "that the doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail when it would defeat the ends of justice, or work a legal wrong," is misleading; and, if literally construed, would result in an enormous practical extension of the powers of corporations.

We do not understand that a result required by adherence to the law would be either unjust or a legal wrong. The learned Judge doubtless intended it to be understood that the defense would be a legal wrong only when the law did not require its consideration by the Court.

This passage, and one of similar character in *San Antonio* v. *Mehaffy*, 96 U. S., 312, was uncalled for in the case in which it was used, and in *Central Transportation Co.* v. *Pullman Car Co., supra,* was characterized as "a mere passing remark."

To sustain this suit, as now presented, would be in affirmance and furtherance of an unlawful and void contract. It is in no sense a suit in disaffirmance.

Whether complainant could tender back the shares received, and maintain a suit to recover the money paid for the shares upon an implied agreement to return money which the defendant had

no right to retain, is a question not presented upon this record.

The decree dismissing the bill must, upon the grounds herein stated, be, and accordingly is, affirmed.