HERMITAGE HOTEL COMPANY *v.* ART. J. DYER.

(*Nashville.*   December Term, 1911.

1. **AGENTS.**   **Liability on contracts made outside of the scope of their authority.**

  The general rule is that, if an agent makes a contract outside of the scope of his authority, he becomes personally liable, not on the contract, but for damages for a breach of an implied warrant of authority to make it; but one exception to this rule is that, where the question of authority of the agent is a mere question of law, an action for damages does not lie, in the absence of fraud, although the agent may represent that he has authority.   (*Post, p.* 305.)

2. **CORPORATIONS.**   **Persons dealing with them are chargeable with provisions of their charters and the general laws.**

  All who deal with a corporation are bound to take notice of the provisions of its charter and the general laws concerning corporations.   (*Post, p.* 306.)

  Case cited and approved:   Miller v. Insurance Co., 92 Tenn., 176.

3. **SAME.**   **No implied power to purchase and hold stock in other corporations; and contract is ultra vires and void, when.**

  A corporation has no implied power to buy and hold stock in another corporation; and where such power is not specifically granted by its charter, or necessarily implied in it, or otherwise conferred by legislation, a contract by one corporation for the purchase of stock in another corporation is *ultra vires* and wholly void, and not ratifiable.   (*Post, p.* 306.)

  Cases cited and approved:   Marble Co. v. Harvey, 92 Tenn., 115; Millery v. Insurance Co., 92 Tenn., 176; Clark v. Railroad, 123 Tenn., 245.

4. **SAME.**   **Agent making ultra vires contract under authority is not personally liable.**

  Where an agent, in pursuance of the authority conferred upon him by a corporation, makes an *ultra vires* contract for it, he incurs no personal liability thereon.   (*Post, p.* 307.)

Hotel Co. v. Dyer.

5. **SAME. Same. Agent not expressly binding himself person-**
**ally is not liable on ultra vires contract authorized by the**
**corporation.**

Where the president of a corporation, as its president, and acting
as agent for it, signed a contract for the purchase of stock in
another corporation, where there was no express agreement
on his part to become personally liable, and the contract was
*ultra vires*, so that no implied contract can arise therefrom,
there is no ground upon which he can be held to be liable upon
the agreement. (*Post, pp.* 307, 308.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.
—JOHN ALLISON, Chancellor.

P. M. ESTES, for complainant.

CHARLES C. TRABUE, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the
Court.

The Hermitage Hotel Company filed its original bill
against Art. J. Dyer, seeking a decree against him for
$1,400, the balance due upon a subscription to the capi-
tal stock of complainant. The subscription was in writ-
ing, and a copy of it was exhibited with the bill, and is
as follows:

"$2000.00　　　　　NASHVILLE, TENN., April 27, '08.

"For the purpose of building a new hotel, corner of Sixth avenue and Union street, in Nashville, and in mutual consideration of the signatures of each subscriber thereto, the undersigned does hereby subscribe one thousand dollars to the capital stock of the Hermitage Hotel Company, a corporation to be organized under the laws of the State of Tennessee.

"The subscription is payable as follows:

"Ten per cent. September 1, 1908; ten per cent. October 1, 1908; ten per cent. November 1, 1908; ten per cent. December 1, 1908; fifteen per cent. on the first days of January, February, March and April, respectively.

"This subscription is conditional upon the following provisions:

"That there shall be subscribed to the capital stock of this company $3,000,000.00.

"That whenever the entire amount of $3,000,000 shall have been subscribed, the incorporators of said company shall resign, and the stockholders shall meet and select a board of directors.

　　"Nashville Bridge Company.

　　　　"By ART. J. DYER, Pres.

　　　　　"Address, 1232 Stahlman Building."

Dyer answered, denying liability, on the ground that the subscription was the act of the company, and not his, and that it did not by its terms impose upon him liability as an individual. A stipulation of counsel was filed in lieu of proof, and the cause proceeded to decree, whereby the bill was dismissed, and complainant ap-

pealed and has assigned error. That the Nashville Bridge Company is not liable for the balance on its subscription is conceded by the complainant in its bill, because there is no provision of its charter which authorizes it to subscribe for stock in any corporation, and therefore as to it the contract of subscription was *ultra vires.* But the complainant bases its suit against Dyer upon the fact that the Nashville Bridge Company has repudiated its subscription after having paid $600 thereof, and that the defendant, who, as the agent of that company, made and signed the subscription for it, became personally liable for the balance due under the rule of the common law that, if an agent make a contract which is outside of the scope of his authority, he becomes personally liable, not on the contract, but for damages for a breach of an implied warrant of authority to make it. 10 Cyc., p. 839, and authorities cited in note 43.

But this general rule is by no means without its exceptions, and one of these is that, "where the question of the authority of the agent is a mere question of law, an action for damages does not lie, in the absence of fraud, although the agent may represent that he has authority." 10 Cyc., p. 840, and authorities there cited.

It is admitted in this record that neither the Nashville Bridge Company nor defendant, Dyer, made any representation to induce the acceptance of the subscription as to the extent of the powers of defendant to bind the company, nor as to its corporate power to subscribe for stock

in the complainant corporation. The subscription was offered on one side, and accepted on the other, apparently without thought or investigation by any of the parties concerned as to the corporate power of the bridge company so to be bound.

"All who deal with a corporation are bound to take notice of its charter, and this may include the general laws concerning corporations." Page on Contracts, vol. 2, section 977, and *Miller* v. *Insurance Co.,* 92 Tenn., 176, 21 S. W., 39, 20 L. R. A., 765.

It has also been held in this State that a corporation has no implied power to buy and hold stock in another corporation. *Marble Co.* v. *Harvey,* 92 Tenn., 115, 20 S. W., 427, 18 L. R. A., 252, 36 Am. St. Rep., 71. And Mr. Page, in his work on Contracts, says it is usually so held, volume 2, section 1077.

The rule is now established in this State that a corporation cannot become a stockholder in another corporation, unless by power specifically granted by its charter, or necessarily implied in it, or otherwise conferred by legislation, and that, where no such charter power exists, a contract by one corporation for the purchase of capital stock in another is *ultra vires* and wholly void, and one which could not be ratified by either party to it, because it could not have been authorized by either. *Marble Co.* v. *Harvey,* 92 Tenn., 115, 20 S. W., 427, 18 L. R. A., 252, 36 Am. St. Rep., 71; *Miller* v. *Insurance Co.,* 92 Tenn., 176, 21 S. W., 39, 20 L. R. A., 765; *Clark* v. *Railroad,* 123 Tenn., 245, 130 S. W., 751, and authorities therein cited.

Where a corporation has authorized its agent to make a contract beyond its charter power, or *ultra vires,* and such contract is made by the agent, he incurs no personal liability thereon.   Page on Contracts, vol. 2, section 975.

Without further discussion of the exceptions to, or limitations of, the general rule, we think it is clear that in this case the complainant was bound to take, and therefore chargeable with, notice of the lack of power in the Nashville Bridge Company to create a valid obligation by a subscription to the capital stock of the complainant; and, this being true, it results that complainant was clothed by the law with knowledge of the lack of power on the part of the defendant to bind his principal. The subscription contract advised complainant that it was not the purpose or intention of the defendant to bind himself individually for the performance of the contract; and, all this being true, it must be clear that no contract on the part of the defendant could arise by implication of law out of the facts of this case.

A contract by implication of law differs from an express contract in this:   That in an express contract the parties arrive at their agreement by words, oral or written; in implied contracts they arrive at their agreement by their acts and conduct.   It is clear from all the facts of this case that there was no act or conduct, on the part either of complainant or of the defendant, at the time of the execution of the subscription, from which we could conclude that either of the parties understood the defendant to be individually liable for the performance

of the contract which he signed on behalf of the bridge company, as its president; it appearing that his conduct was wholly free from fraud.

It results that the decree appealed from must be affirmed, with costs.