STATE OF TENNESSEE, ex rel. v. AMERICAN SAVINGS BANK & TRUST COMPANY.

Western Section. November 15, 1928.

Petition for Certiorari denied by Supreme Court, March 16, 1929.

Lowell W. Taylor and Keeble T. Herron, of Memphis, for appellant.

John Vorder Bruegge, of Memphis, for appellee.

OWEN, J. Mrs. J. T. Sledge individually and as guardian of her daughter, Ida T. Sledge, filed a petition in the chancery court of Shelby county in the above style cause. Mrs. Sledge alleged that she was a creditor of the American Savings Bank & Trust Company, which Bank & Trust Company had failed and its assets were being wound up in the chancery court of Shelby county. Mrs. Sledge was a large depositor in the said bank, the bank did not deny Mrs. Sledge's claim. Mrs. Sledge insists that she was entitled to six per cent (6%) per annum on the daily balance of petitioner's individual account and also her account as guardian of her minor daughter. Mrs. Sledge also sought to recover for a Liberty Bond which she had loaned to said bank.

The Chancellor allowed Mrs. Sledge all of her claims except the item of six per cent (6%) interest, he allowed her three per cent (3%) interest. In passing on the question of interest we quote from the Chancellor's opinion as follows:

With reference to this item, it is insisted by petitioner that she told Henochsberg, the assistant cashier, that she was going to withdraw a large part of her deposit, which amounted to more than $10,000, and invest it in real estate notes, or other securities, that would pay a better rate of interest than a Savings Bank Account, and that thereupon Henochsberg agreed with her to allow her six per cent on her daily balance, and that with this understanding she had left her deposit there for some three years or more. No interest, however, was ever credited to her account either at three per cent or six per cent, except one item of $493.38, which is three per cent for one year

on a deposit of $16,446. This credit is not dated, and it is impossible to say whether it is intended to allow her three per cent for six months interest, or for one year's interest. The bank's charter allows it to pay interest at the rate of three per cent per annum, and in the absence of any evidence to the contrary, we will assume that this credit was for interest for a year, which was the amount allowed by the charter.

The agreement to pay her six per cent per annum being ultra vires, and a credit never having been allowed to her on her pass book, I feel that she should be allowed interest at three per cent (3%) instead of six per cent (6%), and an order may be entered directing this receiver to allow her credit at three per cent from March, 1924.

Mrs. Sledge excepted to the decree of the Chancellor as and filed the record for error in this court and has assigned four errors. The four errors raise but one proposition and that is:

The court erred in entering the decree allowing petitioners only three per cent (3%) on the two accounts upon daily balances in the bank.

The American Savings Bank and Trust Company was chartered under the laws of the State of Tennessee and among the various clauses found in said charter we find the following:

"This corporation shall also be invested with the right and power to receive money on deposit, allowing therefor to the depositor, if the corporation chooses so to contract, interest at a rate not exceeding three per cent per annum. . . ."

Learned counsel for appellant insists that the defendant bank cannot take advantage of its defense of ultra vires, insisting that:

"The courts have gone a long ways to enable parties who had parted with money and property upon the faith of such a contract, to obtain justice by the recovery of the property or money specifically or as money had and received for the plaintiff's use."

This is the language found in Salt Lake City v. Hollister, 118 U. S., 263.

There is a distinction between an ultra vires contract and where a party undertakes to enforce a contract forbidden by statute. In the instant case Mrs. Sledge is permitted to recover all of the property she deposited with the defendant bank, she is seeking to recover more interest than the law by statute and by the charter of the defendant bank permits her to recover.

Chief Justice Lurton, in the case of Miller v. Insurance Company, 92 Tenn., page 176 says:

"It must be, therefore, that any act in excess of these granted powers is an act contrary to public policy, and, upon that

ground, illegal and void. Any other view, by which such acts are to be supported because executed would operate as an enormous practical extension of the power of corporations. The view this court has taken has therefore been that, 'all acts outside the object of its creation, as defined in the law of its organization, and, therefore, beyond the powers conferred upon it,' are acts not voidable only, but wholly void. Buckeye Marble Co. v. Harvey, ante, p. 115; Elevator Co. v. M. & C. R. R. Co., 85 Tenn., 705; Mallory v. Oil Works, 86 Tenn., 598.

"The rule, and the foundation upon which it rests, as held by the English Courts, is identical with our own. The English doctrine is summarized by Mr. Beach in these words: 'Corporations are created for fixed purposes, with certain specified powers. It is deemed to be public policy to keep them strictly within bounds so defined. There is an implied prohibition to go beyond such limits, and all persons dealing with a corporation are charged with notice of the limitations upon its authority. Therefore, every contract of a corporation of its agents, which exceeds the powers of the corporation, violates this implied prohibition, and contravenes such public policy, and is illegal and void. Consequently, as to such contracts, there can be no ratification or estoppel.' 2 Beach on Private Corporations, Sec. 421. The Tennessee rule is in accord with the holding of m|any of the American Courts. Pittsburg Ry. Co. v. Keokuk Bridge Co., 131 U. S., 389; Central Transportation Co. v. Pullman Co., 139 U. S., 60; Davis v. Old Colony R. R. Co., 131 Mass., 258; Chambers v. Falkner, 65 Ala., 448; Marion Savings Bank v. Dunkin, 54 Ala., 471.

"The remedy, in case one of the parties has received a benefit under such a contract, which, ex aequo et bono, it ought not to retain, is a suit in disaffirmance and for an accounting. Buckeye Marble Co. v. Harvey, supra.

"The plaintiff's suit is upon the contract, and in affirmance of it, and, if there be nothing else in the case, could not be maintained."

This principle as announced by Judge Lurton is approved by the following authorities: Marble Co. v. Harvey, 92 Tenn., 115; 18 L. L. A., 252; Leonhardt v. Small, 117 Tenn., 164-165; Pittsburgh, etc., v. R. & H. Bridge Co., 131 U. S., 389; Central Trans. Co. v. Pullman Car Co., 139 U. S., 60; McCampbell v. Railroad, 111 Tenn., 77; Bank v. Chapman, 122 Tenn., 423; Hotel Co. v. Dyer, 125 Tenn., 302.

Thompson on Corporations, Vol. 3, section 2791, 2nd edition, says:

"Contracts mala in se and contrary to public policy. The doctrine that when a corporation enters into a contract merely beyond its powers and such contract has been performed by the

other party thereto, the corporation will not be permitted to deny its power to make such contract, does not apply where the contract is immoral, contrary to public policy or forbidden by constitutional or statutory law. In cases of this character the law will leave the parties just where it finds them. If the contract has not been executed it will not be enforced; if it has been fully executed the law will not extend relief. The law adopts the maxim in pari delicto potior est conditio defendentis, and this without regard to hardships that may thereby be suffered. The state does not furnish courts to enforce contracts it forbids. The principle finds application in cases where the contract sought to be enforced is one which tends to create a monopoly of an illegal trust. The principle likewise forbids the enforcement of lobby contracts, and contracts to influence the action of directors against the interest of the corporation.''

We are of the opinion that the defendant bank is not liable for more than three per cent interest.

First, because the contract sought to be enforced is an illegal contract and secondly, because the petitioner tries to establish a contract for six per cent interest made with one Henochsberg, teller of said bank, and Henochsberg could not contract for the bank. Third, such a contract sought to be enforced is against public policy, it would wreck any bank in a short duration if the bank undertook to pay six per cent upon daily balances. In the case of Morrison State Bank v. Michael, 54 Okla., 257, 153 Pacific, 1114-1115, the Supreme Court of Oklahoma has the following to say, where a contract was sought to be enforced similar to the one we have under consideration:

''The fifth assignment goes to the right and power of the officers of the bank, to enter into a contract binding the corporation to pay interest at the rate of ten per cent per annum, on the deposit or loan of $1000, and is as follows: 'You are instructed that the defendant bank, through its officers, had authority and power, under the laws of the state of Oklahoma, to enter into the contract with the plaintiff as claimed by her. The question for you to determine is whether or not the contract was entered into.' There is no question but what the officers of the bank had the right and power to enter into a contract with the plaintiff, wherein she agreed to deposit her money in their bank. The only question for consideration is, whether the president and cashier of a bank, organized under the laws of this state, can, without the approval of the board of directors, agree to pay, or guarantee to a depositor, or other customer, interest on deposits at the rate of ten per cent

per annum. Section 262, Rev. Stat. of Okla., 1910 Ann. is as follows: 'The affairs and business of any banking association organized under the laws of this state shall be managed or controlled by a board of directors of not less than three nor more than thirteen in number, who shall be selected from the stockholders, at such time and in such manner as may be provided by the by-laws of the association.' We are not herein questioning the power of the president and cashier to agree to pay a reasonable rate of interest on deposits, but are of the opinion and therefore hold, that it would be against public policy for such officers to agree to pay the full legal rate of interest on deposits, or even to guarantee that rate for money left with it in any way. . . .

"It is sufficient in this case to say that it is against the policy of the state for the president and cashier, without the, approval of the board of directors, to agree to pay, or guarantee ten per cent and for that reason the instruction was erroneous to that extent."

We find no error in the decree of the Chancellor, the assignments of error are overruled, the decree of the lower court is affirmed. Costs of appeal will be paid by the appellant, Mrs. Sledge. Costs of the lower court will be paid as decreed by the Chancellor.

Heiskell and Senter, JJ., concur.