## THOMPSON v. PERRINE.

1. *Thompson* v. *Perrine*, 103 U. S. 806, cited and reaffirmed.
2. Overdue coupons detached from a municipal bond which has not matured are negotiable by the law merchant.
3. Where coupons are payable to bearer, the right of the holder thereof to sue thereon in a court of the United States does not depend upon the citizenship of any previous holder. He is not an assignee, within the meaning of the act of March 3, 1875, c. 137.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*Mr. Timothy F. Bush* and *Mr. F. N. Bangs* for the plaintiff in error.

*Mr. William M. Evarts* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

In *Thompson* v. *Perrine*, 103 U. S. 806, we affirmed a judgment of the Circuit Court of the United States for the Southern District of New York, against the town of Thompson, in that State, for the amount of certain coupons of bonds, executed in behalf of that town, by virtue of the provisions of an act passed May 4, 1868, and amended April 1, 1869. Those

acts, as will be seen from the statement of the former case, authorized the town of Thompson, in aid of the construction of a railroad from Monticello, N. Y., to Port Jervis, in the same State,—a majority of its taxpayers, appearing upon the last assessment roll, and representing a majority of the taxable property, not including lands of non-residents, having first consented to the debt being contracted,—to issue bonds, and to invest *the proceeds*, when disposed of, in the capital stock of the railroad company organized to construct the proposed road. Bonds were issued, and instead of selling them and investing the proceeds in the company's stock, the local authorities exchanged them directly with the railroad company for stock. This, according to certain decisions of the highest court of New York, was in violation of the act giving authority to issue the bonds. But, by an act passed April 28, 1871,—previous to which time the bonds had been issued and delivered,—that exchange for stock was, in express terms, ratified and confirmed. And the controlling question in the former case was as to the constitutional validity of the latter statute. In *Horton* v. *Town of Thompson*, 71 N. Y. 513, decided January, 1878, the Court of Appeals of New York held, that as the taxpayers had only consented to an issue of bonds, the proceeds of the sale of which should be invested in stock, it was beyond the power of the legislature to validate bonds, which, in violation of the act under which they were issued, were not sold, but were directly exchanged for stock, of which fact all purchasers had notice from the recitals of the bonds themselves. The adjudication, it was contended by counsel, was binding upon us. But to that proposition we declined to give our assent, and stated, with some fulness, the reasons why we could not give to the decision in the case just cited the effect claimed for it by the town.

We held, for reasons which need not be repeated, that it was within the constitutional power of the legislature of New York to pass the curative statute of April 28, 1871, and that from the moment it was enacted (if not before) the bonds, by whomsoever held, whether by the railroad company or others, became binding obligations upon the town, as much so as if they had originally been sold and the proceeds invested in

stock of the railroad company, as required by the acts under which they were issued.

That decision controls the present case; for the latter, in its essential features, differs from the former only in the circumstance of the time when Perrine acquired title to the coupons in suit. Those heretofore sued on were purchased by him in 1875, while those now in suit were purchased by him in 1878, when they were overdue, and after the decision in 71 N. Y. was announced. Counsel for the town now insist that this court should follow the ruling in *Horton* v. *Town of Thompson*, at least as to holders of coupons or bonds who purchased after it was decided; and they suppose that this court placed its former decision upon the ground mainly that Perrine had purchased the bonds there in suit before the Court of Appeals declared the act to be unconstitutional. But in this view we do not concur. The reference, in the former case, to the date when Perrine purchased, was to illustrate the injustice which would be done were we, in opposition to our own view of the law, to follow the ruling of the State court made after he purchased, — a decision which, with entire respect for the State court, was held not to be in harmony with its former decisions. What we decided was that the curative statute was within the limits of the legislative power, and that, at least from its passage, the bonds, by whomsoever held, whether by the railroad company or others, became enforceable obligations of the town. *Ohio Life Insurance & Trust Co.* v. *Debolt*, 16 How. 416; *Mitchell* v. *Burlington*, 4 Wall. 270; *Taylor* v. *Ypsilanti*, 105 U. S. 60.

There is, however, one point made in this case, not made in the former one, and which it is our duty to notice. It is, that this action is excluded by statute from the jurisdiction of a Circuit Court of the United States.

The eleventh section of the act of Sept. 24, 1789, c. 20, declares that no District or Circuit Court shall "have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange." The provision in the act of

March 3, 1875, c. 137, is: "Nor shall any Circuit or District
Court have cognizance of any suit founded on contract in favor
of an assignee, unless a suit might have been prosecuted in
such court to recover thereon if no assignment had been made,
except in cases of promissory notes negotiable by the law mer-
chant, and bills of exchange."

It is not claimed that the words "assignee" and "assignment,"
as found in the act of 1875, have any meaning different from
that attached to the same words in the act of 1789, or in sect.
629 of the Revised Statutes. But the contention of counsel is
that the coupons in suit, being detached from the bonds and
overdue when Perrine purchased them, were dishonored, and,
therefore, not negotiable by the law merchant; consequently,
it is claimed, they are not within the exception of promis-
sory notes negotiable by the law merchant, but are embraced
by the general inhibition upon suits founded on contract
where the assignor himself could not have sued in the Circuit
Court.

This position cannot be sustained. It is an immaterial cir-
cumstance that the coupons, when purchased by Perrine, were
detached from the bonds. And the bonds not having then
matured, the coupons, though overdue, had not lost the quality
of negotiability by the law merchant. This result must follow
from the principles announced in *Cromwell* v. *County of Sac*,
96 U. S. 51. Further, and apart from any consideration of
the question as to the negotiability, according to the law mer-
chant, of these coupons, Perrine is not an assignee within the
meaning of the act of 1875, or of the previous statutes relating
to the same subject. Giving the words assignee and assign-
ment their broadest signification, and conceding that, in some
cases, the holder of a promissory note may become such in
virtue alone of an assignment, yet, according to the established
construction of the act of 1789, the right of the holder of a
promissory note or bond, payable to a particular person or
bearer, to sue in his own name, did not depend upon the citi-
zenship of the named payee or of the first or any previous
holder; this, because, in all such cases, the title passed by deliv-
ery and not in virtue of any assignment. In *Bullard* v. *Bell*,
1 Mason, 243, Mr. Justice Story said, that to bring a case

within the exception contained in the eleventh section of the act of 1789, " the action must not only be founded on a chose in action, but it must be assignable; and the plaintiff must sue in virtue of an assignment."   " A note," said he, " payable to bearer, is often said to be assignable by delivery; but in correct language there is no assignment in the case.   It passes by mere delivery; and the holder never makes any title by or through any assignment, but claims merely as bearer.   The note is an original promise by the maker to pay any person who shall become the bearer; it is, therefore, payable to any person who successively holds the note *bona fide*, not by virtue of any assignment of the promise, but by an original and direct promise, moving from the maker to the bearer."   In *Bank of Kentucky* v. *Wister*, 2 Pet. 318, 326, this court said that it had " uniformly held that a note payable to bearer is payable to anybody, and is not affected by the disabilities [to sue] of the nominal payee."   *Thomson* v. *Lee County*, 3 Wall. 327; *Bushnell* v. *Kennedy*, 9 id. 387; *City of Lexington* v. *Butler*, 14 id. 282; *Cooper* v. *Town of Thompson*, 13 Blatchf. 434; *Coe* v. *Cayuga Lake Railroad Co.*, 19 id. 522.

The coupons in suit are payable to the holder thereof, and, upon the authority of the adjudged cases, Perrine is not an assignee within the meaning of the act of 1875.   He is entitled to sue without reference to the citizenship of any previous holder.

We perceive no error in the record.

*Judgment affirmed.*