JOHNSON CITY *v.* RAILROAD.

(*Knoxville.* February 11, 1898.).

1. CONSTITUTIONAL LAW. *Power of towns, cities, and counties to become stockholder or loan credit.*

The constitutional provisions prohibiting counties, cities, and towns to loan credit or become stockholders, without the assent of three-fourths of their qualified voters, are absolute and self-executing; but the required election to obtain assent of the voters must be authorized by and held pursuant to a valid statute enacted for that purpose. (*Post, pp. 142–144.*)

Constitution construed: Art. II., § 29.

2. SAME. *Same.*

A statute authorizing counties, cities, and towns to become stockholders in railroad companies, which conforms in other respects to the constitutional requirements, is not rendered invalid or unconstitutional by a provision permitting the subscription to be paid in bonds to be issued without submitting the question of their issuance to the voters. (*Post, pp. 141–144.*)

Constitution construed: Art. II., § 29.

Act construed: Acts 1887, Ch. 3.

Code construed: §§ 1558–1563 (S.).

3. MUNICIPAL CORPORATIONS. *Payment of subscription in bonds not a loaning of credit.*

The payment in bonds by a town or city of its subscription, validly made, for stock in a railroad company is not such loaning of credit as is prohibited by the constitution to towns and cities without the assent of three-fourths of their qualified voters. (*Post, pp. 144, 145.*)

Constitution construed: Art. II., § 29.

Act construed: Acts 1887, Ch. 3.

Code construed: §§ 1558–1563 (S.).

4. SAME. *Same.*

It is appropriate, though not necessary, to submit to the voters of a town or city the question of issuing bonds in payment of

Johnson City *v.* Railroad.

the subscription along with the proposition to become a stockholder in a railroad company. (*Post, p. 145.*)

Case cited and distinguished: Colburn *v.* Railroad, 94 Tenn., 43.

5. SAME. *Not estopped, when.*

A recital in municipal bonds that they were issued pursuant to, and in accordance with, a statute which authorized their issuance alone to " a railroad company incorporated under the general laws of the State," does not estop the municipality to dispute the validity of the bonds in the hands of an innocent holder upon the ground that they were illegally issued to a nonresident corporation. (*Post, pp. 145–148.*)

Cases cited: 147 U. S., 238; 156 U. S., 709; 142 U. S., 355; 111 U. S., 8; 110 U. S., 608; 109 U. S., 735; 102 U. S., 278; 101 U. S., 693; 92 U. S., 637, 484, 642; 21 How., 530: 57 Fed. Rep., 137.

6. SAME. *Same.*

Authority to issue municipal bonds cannot be conferred by 'estoppel. (*Post, pp. 147, 148.*)

Cases cited: 101 U. S., 608, 693.

7. SAME. *Cannot issue bonds to foreign railroad company.*

Municipal bonds issued to a foreign railroad company are not authorized by statute in this State, and are absolutely void. (*Post, p. 147.*)

8. COURT OF CHANCERY APPEALS. *Finding conclusive.*

A finding of the Court of Chancery Appeals that municipal bonds were not issued to a domestic, but to a foreign, railroad company, is conclusive. (*Post, pp. 148, 149.*)

Act construed: Acts 1895, Ch. 76.

Cases cited and approved: Railroad *v.* Knoxville, 98 Tenn., 10; Hughes *v.* Powers, 99 Tenn., 480; Ellis *v.* Brabson, 99 Tenn.,, 538; Bank *v.* Evans, 95 Tenn., 702; Bradshaw *v.* Van Valkenburg, 97 Tenn., 317.

FROM WASHINGTON.

Appeal from Chancery Court of Washington County. JOHN P. SMITH, Ch.

ROBERT BURROW and ISAAC HARR for Johnson City.

CARR & REEVES and WEBB & McCLUNG for Railroad.

CALDWELL, J. The Mayor and Aldermen of Johnson City filed the bill in this cause to impeach and cancel $75,000 of coupon bonds issued by Johnson City to the Charleston, Cincinnati & Chicago Railroad Company in payment of its subscription to the capital stock of that company. Most of the bonds had passed into the hands of innocent purchasers before the bill was filed, and those purchasers, with all other necessary parties, were impleaded as defendants. Briefly stated, the grounds of attack were: (1) That the legislation under which the bonds were issued was unconstitutional; (2) that the company whose stock was subscribed for, and to which the bonds were issued, was not a Tennessee corporation, and (3) that the aggregate issue was in excess of that authorized by the statute. The defendants met the complainants on all these grounds, and denied that the bonds were invalid for any reason. The Chancellor rules for the defendants on the first proposition, and for the complainants on the other two, and thereupon granted the relief sought in the bill. Both sides appealed, and the Court of Chancery Appeals affirmed the decree of the Chancellor on all points. Both sides have again appealed, and by appropriate assignments reopened

the three questions. The subscription was made and the bonds issued under Chapter 3 of the Acts of 1887 (Shannon's Code, §§ 1558 to 1573, inclusive).

The first section is as follows: "That any county, incorporated city or town, may become a stockholder in any railroad company incorporated under the general laws of the State, to an amount not exceeding, in the aggregate, one-tenth of its taxable property, by complying with the requirements of this Act."

The next succeeding seven sections relate to the location of the road, the application for subscription, and the election upon the application. Section 9 prescribes the time and manner of ascertaining the result of the election, and directs that the subscription be made "effective according to the terms thereof and the provisions" of the Act, if it shall appear that the election "was in all respects fair, and that three-fourths of the votes cast . . . were in favor of subscription." Section 10 authorizes a second election if the first one fails. The eleventh section declares that the subscription shall "become due and payable" only when the particular part of the road for which it is made shall be constructed and put in operation.

Section 12 provides "that when such subscription shall become due and payable, as provided in Section 11 of this act, the county, city or town making the subscription shall make and execute its coupon bonds for the amount of such subscription, payable not more than twenty years after date, and

bearing interest at such rate as may be agreed upon, not exceeding six per cent. per annum, payable semi-annually, and deliver the same to the railroad company; *Provided*, That the county, city or town may pay such subscription, in cash at maturity, if it shall .so elect.''

The point of objection is, that the twelfth section, which alone mentions the question of issuing bonds, does not provide for a submission of that question to a vote of the people. The application for subscription, and the proposition to. issue bonds in payment thereof, were both, in fact, submitted to the people at the same time, and as parts of the same transaction. The whole matter, so submitted, was voted on and carried by a three-fourths majority of all the votes cast. The complainants concede that the grant of power to subscribe for stock was valid, because the Act provided for a submission of that question to a vote of the people; but they contend that the grant of power to issue bonds was void because the Act did not provide for a submission of that question to a vote of the people.

Section 29 of Article II. of the Constitution of 1870 is in these words: ''The General Assembly shall have power to authorize the several counties and incorporated towns of this State to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law: and all property shall be taxed according to its value, upon the principles established in regard to State taxation.

But the credit of no county, city, or town shall be given or loaned to or in aid of any person, company, association, or corporation, except upon an election to be first held by the qualified voters of such county, city, or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city, or town become a stockholder with others in any company, association, or corporation, except upon a like election and the assent of a like majority."

Here are three sentences or clauses. The first, which constituted the whole of that section in the Constitution of 1834, states, generally, the purposes for which the Legislature may "authorize" counties and incorporated towns to impose taxes; the second and third, which originated with the Constitution of 1870, and were designed to cut off existing evils and prevent their recurrence, define certain things which no county, town, or city may do in the exercise of such authority, when granted, except upon a prescribed condition.

These new clauses, though in juxtaposition, are entirely independent of each other, and relate to different things. Each contains a separate inhibition, absolute and self-executing. The former inhibits the giving or loaning of credit, except upon a prescribed election; the latter inhibits the acquisition of corporate stock, except upon a like election. The election must be had as to both where both are involved. An election for one will not suffice for the

other also. This much is fixed and put beyond legislative control. Nevertheless, the Legislature has an important part to perform before either can become effective. Indeed, it must take the first step. It must "authorize" the submission of each proposition to the vote of the people before the prescribed election can be lawfully held. No county, town or city has independent authority to hold an election for the one purpose or the other. The inhibition contained in the second and third clauses does not of itself warrant an election upon the respective subjects therein mentioned; but authority to hold an election must first be granted by the Legislature under the first clause. It follows, therefore, that the objection to the twelfth section of the Act is well made, and that the bonds now in question are invalid, if the issuance of the bonds is to be deemed a giving or loaning of credit. We are of the opinion, however, that the issuance of the bonds was not a giving or loaning of credit. On the contrary, it was only a legitimate part of the scheme of becoming a stockholder. The bonds were issued not as a gift or loan of credit, but in payment of the subscription. The Act contemplates no gift or loan of credit. It authorizes no such thing, but only a subscription to stock and payment of the subscription. Such, and such alone, is the Act as manifested in its title and in its body.

The twelfth section provides for the payment of the subscription in bonds (with permission to the

subscriber to pay in money if preferable) when it becomes due and payable; it makes no reference to the giving or loaning of credit.

As the railroad company and the municipal board, in this instance, expected the proposed subscription, if made, to be paid in bonds to be issued by the city, it was appropriate for the application for subscription, and the submission thereof to the vote of the people, to embrace both the question of taking stock and that of issuing bonds, as essential parts of the same proposition. The two things were then connected parts of a single transaction. They cannot now be separated. There was no intention to give or loan the credit of the city, and what was done did not amount to that in legal contemplation. Hence, there was no violation of the second clause of the twenty-ninth section of Article II. of the Constitution. There was only a compliance with the third clause of that section, and, nothing else appearing, the bonds would be valid. This holding is not in conflict with the decision made in *Colburn* v. *Railroad*, 94 Tenn., 43. The contract construed in that case was held to contemplate the issuance of bonds for the combined and inseparable purpose of loaning the county's credit and becoming a holder of corporate stock (pages 53, 54), while in this case the bonds were issued for the latter purpose only.

The next inquiry arises upon the allegation that the subscription was made, and the bonds issued, to a nonresident corporation, and, hence, that the bonds

16 P—10

are invalid. This presents, first, a question of fact, and, secondly, a conclusion of law from that fact. If the fact be true, as alleged, and the city is not precluded from showing it, then the legal conclusion follows inevitably, for there was no authority to make a subscription and issue bonds to a foreign corporation; on the other hand, if the fact is otherwise, or the city is precluded from showing it to be as alleged, the conclusion does not follow, for there was ample authority to make a subscription and issue bonds to a domestic corporation.

The bonds recite upon their face that they were issued pursuant to, and in accordance with, the provisions of the Act herein considered, which implies, among other things, that they were issued to "a railroad company incorporated under the general laws" of the State, since such bonds could rightfully be issued under that Act to no company not so incorporated. This recital estopped the city, in a litigation with innocent holders of the bonds, from denying any recited or implied fact which the enactment made it the duty of the city board to ascertain, determine, and certify, originally and independently of any public record to which such holders might have had access. It did not estop the city in such a case, however, from disputing the existence of any fact which its board was not by the enactment required to decide in the first instance, or which was to be determined by some other authority or from some record accessible to the public. Such

are the affirmative and the negative sides of the rule deducible from the decisions. *Sutliff* v. *Lake County*, 147 U. S., 238; *Citizens' S. & L. A.* v. *Perry County*, 156 U. S., 709; *Chaffee* v. *Potter*, 142 U. S., 355; *Dixon County* v. *Field*, 111 U. S., 8; *Bank* v. *Potter*, 110 U. S., 608; *Sherman County* v. *Simonds*, 109 U. S., 735; *Buchanan* v. *Litchfield*, 102 U. S., 278; *Anthony* v. *Jasper County*, 101 U. S., 693; *Marcy* v. *Oswego*, 92 U. S., 637; *Coloma* v. *Eawes*, *Ib.*, 484; *Humboldt* v. *Long*, *Ib.*, 642; *Knox Co.* v. *Aspinwall*, 21 How., 530; *Coffin* v. *Commiss.*, 57 Fed. R., 137.

When this rule is applied to the present case, it seems entirely clear that the recital and implication mentioned do not preclude the city from showing, if it can, that the company receiving the subscription and bonds was a foreign, and not a domestic, corporation. The Act did not devolve upon the city board the original, independent, and final responsibility of deciding and certifying that question. Moreover, if the company submitting the application was, in reality, a nonresident corporation, there was an absolute want of legal power to make the subscription and issue the bonds; and that power could not be supplied, or the necessity for it superseded, by any certificate of the city board or recital in the bonds. Original power to issue bonds is always essential to their validity, and that power can never be conferred by estoppel. When the power exists and is exercised, those upon whom it

was conferred, and for whom they acted, may be precluded by the doctrine of estoppel from gainsaying that it was exercised in a lawful manner; but if the power is wanting in the first instance this doctrine is wholly inapplicable.

Chief Justice Waite said: "If the power exists in the municipality, the *bona fide* holder is protected against mere irregularities in the manner of its execution, but if there is a want of power, no legal liability can be created." *Anthony* v. *Jasper County*, 101 U. S., 693.

Mr. Justice Harlan concluded the opinion of the Court, in *Bank of Toledo* v. *Porter Township*, 110 U. S., 608, in these words: "The question of legislative authority in a municipal corporation to issue bonds in aid of a railroad company cannot be concluded by recitals, but, the power existing, the municipality may be estopped by recitals to prove irregularities in the exercise of that power." 110 U. S., 619.

It results from the foregoing considerations that the matter of foreign or domestic corporation was open for proof in this cause.

It was a pure question of fact, being simply which of the two companies by the same name, one a South Carolina and the other a Tennessee corporation, made the application and received the subscription and bonds.

The Court of Chancery Appeals found that it was the former, as alleged in the bill. That finding is conclusive, and puts an end to the inquiry. Acts

1895, Ch. 76, Sec. 11 ; *Knoxville & C. G. R. R.* v. *City of Knoxville,* 98 Tenn., 10 ; *Hughes & Davis* v. *Powers,* 99 Tenn., — (S. C., 42 S. W. R., —); *Ellis* v. *Brabson,* 99 Tenn., — (S. C., 42 S. W. R., 438) ; *Bank* v. *Evans,* 95 Tenn., 702 ; *Bradshaw* v. *Vanvalkenburg,* 97 Tenn., 317.

No county, town, or city in this State has any power to make a subscription and issue bonds to a foreign corporation. This power exists in favor of domestic corporations only. The first section of the Act under which this subscription was made and these bonds issued provides, as has been seen, that " any county, incorporated, city, or town may become a stockholder in any railroad company *incorporated under the general laws of this State,* . . . by complying with the requirements of this Act." This provision, by its limitation, excludes foreign corporations, and there is none in any statute that includes them.

It follows that these bonds were issued without legal authority, and that they are, therefore, null and void.

As this is necessarily conclusive of the case, the question of over-issue is pretermitted.

Affirmed.