FIRST NAT. BANK OF COLUMBUS, OHIO, v. OBION COUNTY, TENN., et al.

(District Court, W. D. Tennessee, E. D. October 28, 1924.)

No. 27.

1. **Courts ⪜264(1)—Jurisdiction of court extends to matters incidental to main issue.**

A federal court which has jurisdiction of a suit to recover on county bonds may determine all incidental questions necessary to render its judgment effective.

2. **Counties ⪜173(1)—County without power to issue bonds except as expressly authorized by state Constitution and statutes.**

A county in Tennessee is without power to issue negotiable bonds except under authority expressly conferred by the Constitution and statutes of the state.

3. **Counties ⪜173(1)—Laws authorizing counties to issue bonds strictly construed.**

State laws authorizing issuance of bonds by counties are strictly construed.

4. **Counties ⪜183(1)—County bonds issued without statutory authority are void.**

Bonds issued by a county without statutory authority are void and nonenforceable.

5. **Counties ⪜124(2)—County cannot ratify void action.**

A county is without power to ratify a contract which it was wholly without authority to make.

6. **Counties ⪜183(3)—County estopped to deny recital in bond that it was issued under statute giving the county authority.**

If any authority exists in a county to issue bonds and a bond is issued which by its recitals purports to have been issued under such authority, the county is bound by such recitals and estopped to deny its liability, as against a bona fide holder.

7. **Courts ⪜367—Settled construction of statutes by state courts will be followed by the federal courts.**

A settled construction of state statutes by the state courts, which has become a rule of property or of action, has all the effect of law and will be followed by the federal courts.

8. **Counties ⪜183(1)—Validity of bonds determined by law as settled at time of issuance.**

Under the settled law of Tennessee, the validity of a county bond must be determined

by the law as it was judicially construed at the time of issuance of the bond.

**9. Counties ⟨key⟩184—Bonds issued by county of Tennessee for benefit of drainage district not obligations of county.**

Bonds issued by a county of Tennessee under Tennessee Drainage Act (Laws 1909, c. 185 [Shannon's Code Tenn. §§ 3871a7–3871a170]), for the benefit of a drainage district named therein, and which recite that they are issued pursuant to said act and are payable solely out of the proceeds of the special assessment for benefits levied on the lands in said district, are not general obligations of the county, nor did the officials executing the same have any power to make them such by recitals therein or otherwise, and a purchaser of the bonds is chargeable with notice of the provisions of the statute and that the assessments made for their payment are by its terms liens only on the lands against which they are levied.

**10. Counties ⟨key⟩223—Evidence that county records do not show election authorizing issuance of bonds, and that they were issued under special statute for benefit of drainage district, held competent.**

In a suit to hold a county liable on bonds issued by it, testimony of a county official is competent that the records of the county do not show that an election was held authorizing the issuance of the bonds, which under the statute was essential to make them obligations of the county, as also evidence that they were issued by officers of the county under a special statute for the benefit of a drainage district.

- - - - -

In Equity. Suit by the First National Bank of Columbus, Ohio, against Obion County, Tenn., and others. Decree for defendant County, and for complainant against the other defendants.

G. W. L. Smith, of Brewton, Ala., and Anderson, Rothrock & Carroll, of Jackson, Tenn., for plaintiff.

Pierce & Fry, W. M. Miles, and H. H. Lannom, all of Union City, Tenn., and Taylor & Adams, of Trenton, Tenn., for defendants.

ROSS, District Judge. The plaintiff brought this bill in equity to recover on certain bonds called the bonds of Obion River drainage district No. 2, issued by certain officials of Obion county, Tenn. The amount sought to be recovered is the sum of $11,-643.74 with interest. The total issue of such bonds held by plaintiff is the sum of $62,229 covering a period of time from 1913 to 1932.

Plaintiff is a duly organized national bank of Columbus, Ohio, and the particular defendants sued are: (1) Obion county, Tenn.; (2) the county court of said county, vested with power to create and govern said drainage district; (3) the county judge of Obion county, as chairman of the county

court or governing body thereof; (4) the trustee of Obion county; (5) the board of directors of Obion River drainage district No. 2 of Obion county; (6) several individuals sued as the delinquent taxpayers as the owners of lands within the drainage district mentioned.

The bill contains the necessary allegations to show jurisdiction in this court and alleges in brief that there was created in Obion county, Tenn., a drainage district under the style of Obion River drainage district No. 2 in the year 1913; that bonds were issued by Obion county, Tenn., to the total amount as stated of $62,229, which went into the hands of plaintiff as a bona fide holder for value; that at the time of the filing of the bill the bonds maturing in the years 1921 and 1922, with interest coupons attached, amounted to the sum sued for. It is further alleged that the assessments on the lands within said drainage district for the years 1919, 1920, and 1921 were delinquent in the total sum of $12,856.56, upon which it is claimed plaintiff has a lien for the payment of the amount sued for; that said drainage district was regularly established under the laws of Tennessee, embraced within its bounds 4,030 acres; that the bonds were issued by Obion county by its proper officials; and that the duty rests upon the designated authorities of Obion county to collect the assessments against said lands and apply the same to the liquidation of the bonds issued for the construction of said drainage district.

By the prayer of the bill it is sought to have a decree against all the defendants, to have the amount of the decree declared a lien upon the lands within said drainage district and certain funds in the hands of the trustee collected as the amounts paid in by the owners of lands within the district, to have the amount held by the trustee applied on the judgment, and to have a decree against Obion county for the amount of the bonds issued with interest thereon and attorney's fees. A decree is further sought against each individual landowner for his pro rata share of the bonds with interest thereon and attorneys' fees and the costs of this proceeding, and against all purchasers of any of said lands, their heirs or assigns, for any and all other assessments which have been made, and for general relief.

Answers were filed by Obion county, the county officials, and certain of the individuals sued as such. In so far as it is necessary to here state, issues were presented denying any liability on the part of the

county or the individual county officials and certain of the individuals sued. The creation and construction of the district is admitted, and it is further admitted that the district lies wholly within Obion county. The jurisdiction of this court is denied as to the right of the plaintiff to sue the individuals made defendants to the bill, and certain of the other defendants; but it is admitted that certain of the assessments claimed by plaintiff are delinquent and the bonds sued on are unpaid. However, the individuals answering as well as the officials deny the right of any individual recovery as to them respectively.

The matter is presented upon the pleadings and exhibits thereto and a stipulation of counsel filed in the case, wherein it is agreed in substance that the matters to be considered shall be the pleadings of the respective parties, the bonds sued on, the affidavit of G. W. L. Smith, counsel for plaintiff, the letter of the trustee of Obion county showing that he has in his hands $2,595.20, collected as assessments against the lands, which sum should be paid to plaintiff, a list of the delinquent taxpayers in said district, the drainage laws of Tennessee, and the agreement as to what would be the testimony of Geo. R. Kenney, former county judge of Obion county, and F. J. Smith, the attorney acting in the creation and organization of said drainage district with the exceptions of plaintiff to this testimony. There is further presented the draft of an order proposed for entry in the case agreed to in part by counsel representing plaintiff and counsel for Obion county. While this proposed decree is binding upon no one, it may be considered as the respective admissions of the parties agreeing thereto to the extent of such agreements. The respective contentions of the parties have been ably presented by oral arguments made and briefs filed in the case.

[1] The question of the jurisdiction of this court may be disposed of without comment, for it is clear that plaintiff had a right to come into this court to determine the question of its right to recover on the bonds in the first instance, and inasmuch as the court has jurisdiction for that purpose, all matters incident to the proceedings and necessary to a determination of the rights of the parties or to secure such rights follow as a matter of law, as has been often decided.

The right of plaintiff to a judgment on the bonds in question against Obion River drainage district No. 2 is unquestioned and in fact conceded, as is the right of plaintiff

3 F.(2d)—40

to have applied thereon the funds collected from assessments against the lands within the drainage district and now in the hands of the trustee. In so far as judgments are sought against the individual owners of lands, plaintiff's right is limited to a judgment to the extent only of the assessments against the lands of that individual within the drainage district, and such judgment can be enforced against no other property of the individual than such land. That is to say, the individual landowner is liable only to the extent of the value of the land within the district, as it is specifically provided by statute that no other or further liability exists. Acts of Legislature of Tennessee of 1909, c. 185, §§ 24, 33, 34.

It seems to be conceded that the drainage district is a failure; that the canal which was dug for the purpose of draining the lands embraced within the district is inadequate and has failed to accomplish the objects sought. It appears that many of the owners of land within the district have abandoned their lands rather than pay the taxes or assessments imposed thereon, and that others agree that the lands may be sold for such assessments. It appears further from the statements of counsel that several of the various tracts are delinquent in the matter of state and county taxes, and that the lands embraced within the district are not worth the amount of the bonds issued. Therefore the principal contention in this case, and really that upon which plaintiff most earnestly insists, is as to whether there exists a right to a judgment against Obion county. In other words, are the bonds sued on the obligation of Obion county, Tenn., or is the plaintiff limited to the lands embraced within the drainage district as security or as the property out of which collection must be enforced? Whether or not the county of Obion is liable depends upon whether the county had authority to issue such bonds. Plaintiff insists that at the time the bonds were issued ample authority existed under the statutes of Tennessee to warrant the county in placing these bonds upon the market as the obligations of Obion county for the payment of which the entire resources of the county stood pledged. The contention of the county is that it had authority to issue bonds as it did through its proper officers, but that for the payment of such bonds plaintiff must look to the lands embraced within the drainage district, for the construction of which they were issued.

[2-5] The right of a county in Tennessee to issue negotiable interest-bearing bonds or

warrants must be found within the Constitution and statutes of the state. In the absence of such authority, no right whatsoever exists whereby a county can bind itself by time certificates, bonds, or warrants, nor has the county court or any county authority, in the absence of a statute expressly conferring such authority, the power to issue negotiable bonds of the county for any purpose whatsoever. This has been often determined and has been the settled law of Tennessee almost from the time of the adoption of the Constitution of the state in 1870. Colburn v. Railroad, 94 Tenn. 43, 49, 50, 28 S. W. 298; Burnett v. Maloney, 97 Tenn. 715, 37 S. W. 689, 34 L. R. A. 541; Richardson v. Marshall County, 100 Tenn. 349, 45 S. W. 440; Weil v. Newbern, 126 Tenn. 263, 148 S. W. 680, Ann. Cas. 1913E, 25. And the power to issue bonds and incur extraordinary debts can spring from no other source than the Constitution and laws of the state, and in Tennessee such powers are strictly construed. Pulaski v. Gilmore, 3 Shan. Cas. 115; Milan v. Railroad, 79 Tenn. (11 Lea) 334; Johnson City v. Railroad, 100 Tenn. 138, 44 S. W. 670; Burnett v. Maloney, supra; Richardson v. Marshall County, supra. Nor has a county a right to vary the bonds authorized by the statute. Burnett v. Maloney, supra. And bonds issued by a county where no legislative authority for their issuance exists are void and nonenforceable regardless of their recitations. Richardson v. Marshall County, supra. Nor does any authority exist in a county by any act on its part to ratify a void action. Wallace v. Tipton County, 3 Shan. Cas. 542; Marsh v. Fulton County, 77 U. S. 673, 683, 684, 19 L. Ed. 1040; Daviess County v. Dickinson, 117 U. S. 657, 6 S. Ct. 897, 29 L. Ed. 1026; Norton v. Shelby County, 118 U. S. 425, 453, 454, 6 S. Ct. 1121, 30 L. Ed. 178; Railway & Navigation Co. v. Hooper, 160 U. S. 514, 524, 16 S. Ct. 379, 40 L. Ed. 515; Scott Co. v. Thresher Co. (C. C. A.) 288 F. 739, 749.

[6] It seems clear and well settled that if any authority exists for the issuance of a bond on the part of a county or municipality and a bond is in fact issued which by its recitations purports to have been issued by virtue of such authority, such county or municipality is bound by the recitations in the bond and estopped to deny its liability thereon as against a bona fide holder for value. Mercer County v. Hackett, 68 U. S. 83, 17 L. Ed. 548; Kenicott v. Wayne County, 83 U. S. 452, 466, 21 L. Ed. 319; Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Moultre County v. Bank, 92 U. S. 631, 23

L. Ed. 631; Marcy v. Oswego, 92 U. S. 637, 23 L. Ed. 748; Daviess County v. Huidekoper, 98 U. S. 98, 25 L. Ed. 112; Orleans v. Platt, 99 U. S. 676, 25 L. Ed. 404; Anthony v. Jasper County, 101 U. S. 693, 25 L. Ed. 1005; Buchanan v. Litchfield, 102 U. S. 287, 291, 26 L. Ed. 138; Wells v. Pontotoc County, 102 U. S. 625, 26 L. Ed. 122; Bonham v. Needles, 103 U. S. 648, 651, 26 L. Ed. 451; School Dist. v. Stone, 106 U. S. 183, 1 S. Ct. 84, 27 L. Ed. 90; Bank v. Porter, 110 U. S. 608, 616, 4 S. Ct. 254, 28 L. Ed. 258; Dixon County v. Field, 111 U. S. 83, 4 S. Ct. 315, 28 L. Ed. 360; Grenada County v. Brogden, 112 U. S. 267, 5 S. Ct. 125, 28 L. Ed. 704; Merchants' Bank v. Bergen County, 115 U. S. 392, 6 S. Ct. 88, 29 L. Ed. 430.

It is equally well established that, as above stated, where no authority exists for the issuance of such an obligation, no recitation in the bond or subsequent act of the county or municipality can bind the county or municipality, even though the bonds may go into the hands of a bona fide holder.

It was said in Anthony v. County of Jasper, 101 U. S. at page 697:

"Dealers in municipal bonds are charged with notice of the laws of the state granting power to make the bonds they find on the market. This we have always held. If the power exists in the municipality, the bona fide holder is protected against mere irregularities in the manner of its execution, but if there is a want of power, no legal liability can be created."

If any other authority be needed on this point, the cases above cited are ample, but in addition there are Katzenberger v. Aberdeen, 121 U. S. 172, 7 S. Ct. 947, 30 L. Ed. 911; German Savings Bank v. Franklin County, 128 U. S. 526, 9 S. Ct. 159, 32 L. Ed. 519; Lake County v. Graham, 130 U. S. 674, 9 S. Ct. 654, 32 L. Ed. 1065; Doon v. Cummins, 142 U. S. 366, 12 S. Ct. 220, 35 L. Ed. 1044; Barnett v. Dennison, 145 U. S. 135, 14 S. Ct. 1142, 38 L. Ed. 1075; Knox County v. Bank, 147 U. S. 91, 13 S. Ct. 267, 37 L. Ed. 93; Sutliff v. Lake County, 147 U. S. 230, 238, 13 S. Ct. 318, 37 L. Ed. 145; Hedges v. Dixon County, 150 U. S. 182, 187, 14 S. Ct. 71, 37 L. Ed. 1044; Citizens' Saving & Loan Association v. Perry County, 156 U. S. 692, 709, 710, 15 S. Ct. 547, 39 L. Ed. 585.

[7] It is the law that, in the administration of state laws in cases between citizens of different states, the courts of the United States have an independent jurisdiction coordinate with that of the state courts and are bound to exercise their own judgment

as to the meaning and effect of those laws; but such is not the rule where by the course of the decisions of state courts certain rules are established which become either rules of property or rules of action, nor is such the rule in courts of the United States as to the settled construction of Constitutions and statutes by the state courts.

In Burgess v. Seligman, 107 U. S. at page 33, 2 S. Ct. 21 (27 L. Ed. 359), it is said:

"The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference.

"Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But where the law has not been thus settled, it is the right and duty of the federal courts to exercise their own judgment; as they also always do in reference to the doctrines of commercial law and general jurisprudence. So when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision, of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such rights have accrued. But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts * * *."

A long list of authorities is cited in a note on pages 34 and 35.

The Constitution and statutes of Tennessee in similar matters have been construed by our state courts, and by such decisions it is held that municipalities have no implied power to issue negotiable bonds merely because they may have power in certain ways to subscribe for stock. Milan v. Railroad, 79 Tenn. (11 Lea) 329; Pulaski v. Gilmore, supra; Norton v. Dyersburg, 127 U. S. 160, 174, 175, 8 S. Ct. 1111, 32 L. Ed. 85; Kelley v. Milan, 127 U. S. 149, 155, 8 S. Ct. 1101, 32 L. Ed. 77; Clark v. R. R., 123 Tenn. 245, 130 S. W. 751; Hotel Co. v. Dyer, 125 Tenn. 306, 142 S. W. 1117; Weil v. Newbern, 126 Tenn. 263, 148 S. W. 680, Ann. Cas. 1913E, 25. And county bonds issued by county officers without authority of the county court are not binding on the county, nor is the county estopped by receipt of the coupons attached to such bonds for taxes. Barnard v. Hawkins County, 2 Shan. Cas. 97; Carriger v. Morriston, 69 Tenn. (1 Lea) 257; Weil v. Newbern, supra. Furthermore, municipal bonds not expressly authorized by statute are void. Pulaski v. Gilmore, supra; Richardson v. Marshall County, supra; Weil v. Newbern, supra.

[8] It is further held that the power to make contracts generally does not confer power to sign municipal interest-bearing bonds, and that they must be expressly empowered so to do. Moreover, in Pulaski v. Gilmore and Richardson v. Marshall County, supra, it is held that where a municipality had no authority to issue bonds in question, such want of authority might be interposed as a defense against such bonds, although the same might be held and sought to be enforced by innocent purchasers for value. Also it is settled that the validity of a county bond must be determined by the law as it was judicially construed at the date of the issuance of such bond. Richardson v. Marshall County, supra; Shaeffer v. Mitchell, 109 Tenn. 211; State ex rel. v. Bristol, 109 Tenn. 315, 70 S. W. 1031; Douglass v. Pike County, 101 U. S. 677, 686, 687, 25 L. Ed. 968; Ralls County v. Douglass, 105 U. S. 728, 732, 26 L. Ed. 957; Taylor v. Ypsilanti, 105 U. S. 72, 73, 26 L. Ed. 1008; La. v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090; Thompson v. Perrine, 106 U. S. 589, 591, 1 S. Ct. 564, 568, 27 L. Ed. 298; Green County v. Conners, 109 U. S. 104, 3 S. Ct. 69, 27 L. Ed. 872; Anderson v. Santa Anna, 116 U. S. 356, 361, 6 S. Ct. 413, 29 L. Ed. 633; German Savings Bank

v. Franklin County, 128 U. S. 526, 9 S. Ct. 159, 32 L. Ed. 519.

With these principles established it remains to determine if there existed under the laws of Tennessee any authority whatsoever to warrant the issuance of the bonds in question. If such authority existed, it was under and by virtue of article 2, § 29, of the Constitution of Tennessee and certain statutes. The constitutional provision is:

"The General Assembly shall have power to authorize the several counties and incorporated towns in this state, to impose taxes for county and corporate purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to state taxation.

"But the credit of no county, city or town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city or town become a stockholder with others in any company, association or corporation except upon a like election, and the assent of a like majority * * *."

(The portion of the section omitted relates to certain counties excepted for a limited time from the provisions quoted.)

The statute laws of Tennessee pertaining to drainage matters and kindred subjects may be found in Shannon's Compilation of the Statutes of Tennessee, sections 3849 to 3871a170, inclusive, being the Acts of the Legislature of Tennessee of 1841–42, c. 71, of 1871, c. 131, of 1901, c. 65, and of 1909, c. 185, with the amendments thereto.

Plaintiff seems to recognize the principle that if no authority existed for the issuance of the bonds in question the county is not liable thereon, and insists that such authority is to be found in the statutes to which reference is above made.

The Acts of 1841–42, c. 71, relates alone to the draining of swamp lands belonging to an individual when surrounded by the lands of others who refuse to permit such individual to cut drains through their lands where such drains are necessary to reclaim the lands of the individual in the first instance. These provisions as embraced in sections 3849–3854, inclusive, of Shannon's Code 1917, confer among other things, authority to have a jury of view appointed to assess the damages incident to the cutting

of such a ditch by the individual landowner, which damages are to be paid by him, and they provide for making their findings the order of the court, and have certain conditions which must be complied with as to the location of the ditch. Under this act no authority whatever exists for the insuance of any bonds from any source. The next act is that of 1871, c. 131, embraced within sections 3855–3871, inclusive, of the above compilation, and relates solely to the construction of levees to prevent the overflowing of lands by headwater or in times of high water. This statute provides how such levees may be constructed, and the first section thereof contains this provision:

"The county courts of the several counties in this state within the limits of which are lands rendered unfit for occupation and farming purposes by reason of the overflowing of the same in times of high water in the rivers adjacent thereto, may issue bonds for the purpose of constructing levees to protect the same."

However, before this could be done it was necessary that an election be held and that the right to issue such bonds should be sanctioned by three-fourths of the votes cast at such election. When such proceedings were had, the county was authorized to issue bonds to defray the expenses of the work of construction. While the Acts of 1901, c. 65, as embraced within sections 3871a1–3871a6, would seem to be more properly an amendment of the act last referred to, in that this latter act simply provides a means whereby the counties issuing levee bonds may retain the state's increment of taxes to apply on the same. The fact that such latter act makes use of the words that for the purpose of constructing or aiding in the construction of a levee or "levees or drainage to reclaim and improve the low, wet, and overflowed lands" within said county could not be construed to warrant the issuance of bonds for the construction of a drainage district unless authority to construct such district existed. Certainly this latter act could not, by the mere use of the word "drainage," in the way in which it appears in the act, give authority to establish drainage districts and issue bonds or certificates in payment therefor. It was manifestly not the intention of the Act of 1901 to do other than provide for an apportionment of the funds as stated above. Nor could it hardly be said that the authority to construct a levee would warrant the digging of a canal or ditch or the straightening of a stream with a view of draining certain areas. Different riparian rights are

involved, or certainly might be involved, in the changing of the course of a stream by straightening the same, or by digging ditches or canals to draw off its headwaters in different channels, than would be involved by the mere construction of a levee as provided for by chapter 131 of the Acts of 1871. In neither of said Acts of 1871 or 1901 is the power impliedly or expressly given to construct such a drainage district as that for which the bonds in question were issued.

[9] This brings us to a consideration of chapter 185 of the Acts of the Legislature of Tennessee of 1909, with its amendments thereto embraced within sections 3871a7 to and including 3871a170 of Shannon's Code. This law is commonly referred to and known as the "Drainage Law" of Tennessee. Manifestly, if no authority existed for the issuance of the bonds under either of the acts above mentioned, and if there existed any authority whatsoever for their issuance, then it must be found within the provisions of this latter act with its amendments. This act would seem to be a complete scheme within itself. However, whether it should be so considered, or whether it should be considered in conjunction with the acts above cited and as a part and continuation thereof, is a question which need not be here determined, in view of the construction placed upon said former acts. But before considering this act in detail it may be well to consider certain other provisions of the laws of Tennessee, relative to counties and county officials. By section 493 of Shannon's Code it is provided that every county is a corporation and the justices in the county court are the representatives of the county and authorized to act for it. This section is based upon the provisions of the Constitution of Tennessee, article 10, § 4, and article 2, § 29. By section 511 provision is made for a judge or chairman of the county court of the various counties, and the general duties of such official are set out under section 517. Nowhere is there found a statute which authorizes such official to issue bonds for any purpose binding the county.

By section 5993 of Shannon's Code it is provided that all business in the county court which cannot be lawfully done by the county judge or chairman shall be done at the quarterly sessions to be held at stated periods, and the general powers of the quarterly court are set out under section 6027, the last subdivision of which confers power upon the quarterly session of the county court to do "all other matters of which jurisdiction is conferred by law." By none of the provisions of the statute is power conferred upon the quarterly court to issue bonds such as those in question, except where special provision is made by particular enactment. Furthermore by section 6045, provision is made for appropriations of county funds under sixteen specific heads, none of which applies to bonded indebtednesses, and it is specifically provided by section 6046 that the court shall have no authority to appropriate money for any purpose "unless specially provided for by law." By decisions too numerous to mention it has been repeatedly held in Tennessee that neither a county official nor the county court possesses any power except that given by statute.

Acts of 1909, c. 185, of the Legislature of Tennessee was first before the Supreme Court of Tennessee in 1911 in the case of State ex rel. v. Powers, 124 Tenn. 553, 137 S. W. 1110. In this case a mandamus suit was brought seeking to compel the county judge of Gibson county to issue a warrant to pay for certain preliminary expenses in connection with the construction of a proposed drainage district. The expenses had been provided for by the quarterly court acting under the provisions of the Act of 1909. The county judge declined to issue the warrant upon the ground that the act was in violation of the Constitution of Tennessee, for several reasons, and particularly because it was claimed it provided a system of taxation upon a basis of particular benefits to certain lands or individuals and that the power of taxation was conferred upon an authority other than the quarterly court of the county. In construing the act in this case, it was held that it was not violative of any constitutional provision of the state as contended, and that the power conferred by the act whereby assessments might be made against the lands within the bounds of the proposed drainage district was not a levy of taxes, but a fixing of special assessments according to the benefits to be derived by reason of the improvements proposed, and that inasmuch as the act did not provide for a system of taxation it did not fall within the provisions of article 2, § 29, of the state Constitution, requiring that taxes should be according to value, or that an election should be held before the credit of a county could be loaned in aid of any individual, etc. The court construed a drainage district such as proposed by the act as a county purpose for the construction of which special assessments might be made against the property within such district as-

cording to the proportionate benefits to be derived by the particular owners. The question of the validity of bonds issued under the act was not considered, nor so far as investigation has revealed has that question been determined by the Supreme Court of Tennessee.

After the provisions in the Act of 1909 for the establishment of drainage districts and the assessment of the costs of construction against the lands embraced therein, it is provided by section 12 that—

"The assessments shall be levied upon the lands of the owners so benefited in the ratio aforesaid, and shall be collected in the same manner as taxes for county purposes, except as herein specially provided, and the funds so collected shall be kept as a separate fund, and shall be paid out only for purposes properly connected with such improvement, and on the order or warrant of the judge or chairman of the county court."

The act provides that wherever reference is made to the county court, except as otherwise specifically stated, it shall refer to and mean the court presided over by the county judge or chairman, and not the quarterly county court. By section 24 it is provided that—

"The assessments as provided for by this act shall be collected by the county trustee as county taxes are collected, except as herein provided, and the funds so collected shall be kept as a separate fund, and shall be paid out only for purposes properly connected with such improvement on the order or warrant of the county judge or chairman; but such assessments may be collected by bill filed in chancery, as hereinbelow provided, and no personal property of the owner of land so assessed shall be liable or distrained upon for such assessment, but the land so assessed only shall be liable for such assessment."

By section 27 it is provided that—

"If the county court shall determine that the estimated cost of reclamation and improvement of such district of land or levee or drainage district is greater than should be levied in a single year upon the lands benefited, the court may fix the amount that shall be levied and collected each year, and may issue drainage bonds of the county, bearing not more than 6 per centum annual interest, said interest payable annually, and may devote such bonds at par, with accrued interest, to the payment of expenses and work as it progresses, or may sell the same at not less than par, with accrued interest, and devote the proceeds to such payment;

and if, in the sale of said bonds, a premium is received, such premium shall be credited to the drainage fund; and should the cost of such work exceed the estimate, a new apportionment of the assessment may be made and levied and other bonds issued and sold in like manner, but in no case shall the bonds run longer than twenty years. Any property owner may pay the full amount of the benefit assessed against his property before such bonds are issued and receive a receipt in full therefor. * * *

"The terms and times of payment of the bonds so issued shall be fixed by the board of directors of the improvement district, and such bonds shall be signed by the judge or chairman of the county court and countersigned by the clerk of the county court, each of said officers signing his name officially, and shall be verified either by the county seal or seal of the county court clerk. Said bond shall be issued for the benefit of the district numbered thereon, and each district shall be numbered by the county court and recorded by the county clerk in the drainage record, said record showing specifically the lands embraced in said district and upon which the assessment has not been previously paid in full.

"Each bond shall show expressly on its face that it is to be paid only by assessments levied and collected on the lands within the district so designated and numbered, and for the benefit of which district such bond is issued; nor shall any assessment be levied or collected for the payment of said bond or bonds, or the interest thereon, on any property, real or personal, outside the district so numbered, designated, and benefited * * *."

By section 33 it is provided that—

"The assessments provided for by this article, when made and levied, shall be and become valid liens upon such lands so assessed just as state and county taxes are liens upon lands"; and "when such assessments have been due and delinquent for sixty days, bills may be filed in the Chancery court of the county, or chancery district, in which the lands lie, upon which such assessments are due and delinquent, for the collection thereof out of such lands by a sale thereof in all cases, except in cases where the assessment is made against a railroad company or a public highway, as herein provided. * * * Upon confirmation of such sale by the chancery court, it shall divest title out of the owner and vest it in the purchaser, and award a writ of possession, if asked for; but where title is

so vested in a purchaser the land so purchased shall still be subject, in the hands of the purchaser, his heirs, or assigns, to any other assessments not yet due, or unpaid, that may have been made and fixed or levied upon it at the time of such confirmation of sale, for the benefit of the improvement district on account of which such sale has been made. * * * "

The amendments to the act do not alter the effect of the provision above quoted.

The form of the bonds sued on is as follows:

"United States of America.
"Number ——.

"$500.00.                                  $500.00
"Obion River Drainage District No. 2.

"Obion County Drainage Bond.
"6 Per Cent.

"Know all men by these presents that the county of Obion, in the state of Tennessee, acknowledges itself to owe, and for value received hereby promises to pay to bearer as hereinafter provided the sum of five hundred dollars in lawful money of the United States of America, on the first day of May, 1921, with interest thereon from the date hereof until paid, at the rate of six per centum per annum, payable annually on the first day of May in each year, on presentation and surrender of the annexed interest coupons as they severally become due. Both principal and interest of this bond are hereby made payable at the New First National Bank, of Columbus, Ohio.

"This bond is one of a series of one hundred and twenty-four (124) bonds, aggregating of the principal the sum of sixty-two thousand two hundred and twenty-nine dollars ($62,229.00) issued by the county of Obion for the purpose of paying the cost of a combined system of drainage in said county known as 'Obion River drainage district No. 2' of Obion county, Tennessee, and in anticipation of the collection of a special assessment of tax duly levied upon lands benefited pursuant to an order made by the county court of Obion county, duly entered of record and in strict compliance with chapter 185 of the Acts of the State of Tennessee passed by the Fifty-Sixth General Assembly of said state.

"This bond is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessment for benefits heretofore legally levied on the lands in said District, and benefited by said improvements, and thereunto the said special assessment is hereby irrevocably pledged; and it is hereby certified and recited that all acts, conditions and things required to be done in locating and establishing said district and in equalizing and levying said assessment against the lands benefited thereby and precedent to the issuing of this bond have been done, had and performed in due form of law, and that the total amount of bonds issued for the account of said drainage district does not exceed the assessment so levied therefor and uncollected at the time said bonds are issued or any legal limitations thereon; and for the prompt performance of all the covenants, recitals and stipulations herein contained and for the collection and application of said assessment, and for such other and further assessments authorized and required to provide for the prompt payment of this bond and the interest thereon, the full faith and resources of said county are hereby irrevocably pledged.

"In testimony whereof, the county of Obion, Tennessee, has caused this bond to be signed by the judge or chairman of its county court and countersigned and recorded by the county clerk and verified by the county seal or seal of the county clerk, and has caused the coupons hereto attached to be executed by the lithograph fac simile signatures of said officials, all as of the first day of May, 1913. George R. Kenney, Judge of the County Court of Obion County, Tennessee.

"Countersigned and recorded: C. S. Talley, County Court Clerk. [Seal.]"

"Interest Coupon.

"On May 1, 1921, the county of Obion, in the state of Tennessee, promises to pay to bearer the sum of thirty dollars ($30.00) lawful money of the United States, at the New First National Bank, in the city of Columbus, state of Ohio, being one year's interest due that date on drainage bond No. 60 issued for the account of Obion River drainage district No. 2, dated May 1, 1913.

"George R. Kenney.
"C. S. Talley."

It will be noted that not only does the Act of 1909, which authorized the bonds in question, specifically provide that such bonds shall be collected out of no other property than that embraced within the drainage district, but the bonds show upon their face that they are issued for the purpose of paying the costs of the particular drainage district of Obion county, and are in pursuance of an order of the county court "in strict compliance with chapter 185

of the Acts of the State of Tennessee, passed by the Fifty-Sixth General Assembly of said state." And further is it provided in the face of each bond that—

"This bond is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessment for benefits heretofore legally levied on the lands in said district and benefited by said improvements. * * *"

The provisions of the law by the recitations of this bond became a part of the bond as if written therein. Attention is again called to the quotation above set out from the opinion of the Supreme Court of the United States in Anthony v. County of Jasper, 101 U. S. 693, 25 L. Ed. 1005, and under this authority plaintiff herein was charged with notice not only of the particular act of the Legislature cited in the bond, but with the laws of Tennessee applicable to such bonds.

It is true the bond states in the beginning that the county of Obion acknowledges itself to owe, etc., and promises to pay the amount specified in the bond to the holder thereof; but this general provision is but the usual form in which such a bond would be issued under authority such as conferred by the Legislature of Tennessee in the Act of 1909, and certainly could not prevail over a special provision in the bond calling the direct attention of any prospective purchaser to the fact that the bond is issued in accordance with and under the provisions of a particular power conferred by a particular act and that such purchaser or holder must look to certain specified property for the collection of the bond, and when such purchaser looked further to the provisions of the act he would readily see that the Legislature in unmistakable language was solicitous to limit the power to collect on any bonds issued to the lands within the drainage district proposed to the exclusion of all other property, either real or personal, of the individual owners of such lands or any other parties. It would be difficult to conceive in what phraseology the intention of the Legislature could have been couched to make it more plainly appear that each drainage district created under the provisions of the act should be made to bear the expenses of its own construction, and that no other method could be resorted to for the collection of the costs of construction than that provided by the terms of the act. A contemplative purchaser of the bonds could not read the general provisions of the first part of the bond and close

his eyes to the specific provisions and limits contained therein in another portion thereof, nor could such contemplative purchaser properly construe the wording of the latter portion of the bond as pledging any other resources of the county for the payment of the bonds than that to which the bond and the act specifically referred. If in fact the county officials issuing the bonds had undertaken to bind the county, under the authorities above cited, such acts on their part would have been void.

It is earnestly insisted by plaintiff that the latter portion of the bond quoted shows that the county has pledged its entire resources and its good faith for the payment of the bonds in suit, and that this wording means that not only the lands embraced within the drainage district, but the entire wealth of Obion county may be subjected to the payment of the bonds to the extent necessary. The bond will hardly bear the construction plaintiff seeks to place upon it. Furthermore, the bond must be construed as a whole. After it is stated in the bond that it is based upon and constitutes a lien and is payable solely out of the proceeds of the special assessments upon the lands within the particular drainage district it is true, it is recited:

"And it is hereby certified and recited that all acts, conditions and things required to be done in locating and establishing said district and in equalizing and levying said assessments against the lands benefited thereby and precedent to the issuing of this bond have been done, had and performed in due form of law, and that the total amount of bonds issued for the account of said drainage district does not exceed the assessment so levied therefor and uncollected at the time said bonds are issued or any legal limitations thereon. * * *"

The most that can be said of this recitation is that the bonds state as a fact that the county has done, under the act, all that is required by law to be done to properly establish said drainage district and provide for the assessments, etc., in order that the bonds may be issued as provided by the act. As above stated, if the officials signing the bonds meant more than this, there was a total lack of authority for any attempt to bind the county or to provide any other method for the payment of the bonds than authorized by the Act of 1909. It is also true that it is recited in the bonds that—

"For the prompt performance of all the covenants, recitals and stipulations herein

contained and for the collection and application of said assessment, and for such other and further assessments authorized and required to provide for the prompt payment of this bond and the interest thereon, the full faith and resources of said county are hereby irrevocably pledged."

This portion of the bond contains its own limitation, and that is that for the prompt performance of the provisions of the bond as limited by the act, and any further steps necessary to provide for its payment out of the particular funds created therefor or out of the lands assessed or to be further assessed, the full faith and resources of the county are pledged; but it does not mean that the full faith and resources of the county are pledged for the payment of the bond out of any other fund or property than that provided by the act. If such was the intention of the officials, they had no authority for their acts, or if such construction should be placed upon this language, it finds no foundation in the act authorizing the issuance of the bond.

No language of the officials issuing the bond which might be placed therein could create a right which the law had not given them, nor could they, by any recitation whatsoever, place a binding obligation upon the county unless some authority so to do existed, nor could they by any such recitation give life and character to a totally invalid obligation, so far as the county generally was concerned—invalid because no warrant for its existence as such could be found in the law which it is claimed was its foundation.

The county officers signing the bonds had a right to issue the bonds in the form they did, and such bonds became and are an obligation against all the lands within the drainage district mentioned, to the extent of the proportionate benefits assessed against such lands. When the plaintiffs became the holders of the bonds, the duty rested upon them to take cognizance of the statutes of Tennessee which became a part of the bonds. There was nothing compulsory in their purchase. There were the records of the county open for inspection, which disclosed the drainage district for the construction of which the bonds were issued. These records showed the lands within the district, the number of acres, and their location. There was the legislative act which plaintiff was bound to know. It was a matter for plaintiff to investigate. If investigation would have revealed that the lands within the proposed district were of doubt-

ful value, or that the amount for which the bonds were issued was in excess of the value of the lands, it was a matter for the consideration of plaintiff, or any contemplative purchaser of the bonds. The law gave notice that the security was thus limited. While it is true a bona fide holder of the bonds such as plaintiff is in this case should be given great consideration with a view of endeavoring to protect all rights such party may have, yet such a holder is no such favored object of the law as that his rights will totally obscure the rights of other parties who may be equally innocent of any intended wrongdoing.

It may be said that it is unfortunate that the drainage district in question did not prove a success, but this cannot alter the status of the respective parties, for it was a possibility that should have been within the contemplation of the plaintiff for investigation at the time the bonds were issued and purchased.

The rights of plaintiff are defined by the statutes, and to these rights it must be confined under the general principles of the law.

By this Act of 1909 and its amendments the Legislature has sought to provide a system whereby the low swampy lands of Tennessee may be drained at the expense of such lands, and inasmuch as the act proceeds upon the assumption that the lands will be benefited, it follows that whatever benefits flow from the creation of the drainage district under the act would be in the nature of increased value to the lands primarily, and thus inure to the benefit of the landowner, and secondarily such benefits as the public might derive (a) by reason of the locality being made more healthful, and (b) by reason of increased taxes as the lands become more valuable. However, neither the consideration of the question of public health nor economic benefits would warrant the drainage of such lands at the expense of those living in sections of the county remote from the drainage district who in reality derived no benefits therefrom. The act was sustained upon one ground by the Supreme Court of Tennessee because the assessments were fixed against the particular lands sought to be benefited and were not in the nature of general taxes. By this act the Legislature gave to the county judge authority to pass upon the questions presented relative to the construction of a proposed drainage district, not as the financial agent of the county, but in his judicial and ministerial character re-

spectively, as his duties are defined. It was not the intention of the act to vest in the county judge the authority to issue bonds of the county, or to give him any unlimited scope whereby the county might be bound by such bonds as he should determine to issue in the construction of any proposed drainage district. Such authority might be dangerous in the extreme, whereas the authority which is vested in the county judge by the act is reasonable and in the matter of issuing the bonds themselves his acts are largely ministerial. Other agencies make the assessments and determine upon the amount, and all these matters were matters of which plaintiff had notice or should have had notice. It was plaintiff's duty to investigate before purchasing the bonds. Plaintiff is presumed to know what that investigation would have revealed. If it failed to so investigate, such failure cannot be now charged against the county.

[10] Exception is made by plaintiff to that part of the evidence offered by defendant, Obion county, to the effect that the records of the county would show that no election was held to authorize the issuance of the bonds in question, and that they were issued without authority from the Quarterly county court, and by the county judge and county court clerk under the provisions of the Act of 1909. In view of the fact, as above stated, that no authority existed warranting such officials to bind the county by the issuance of the bonds, such testimony is not incompetent and may be offered as against even a bona fide purchaser for value. Merrill v. Monticello, 138 U. S. 673, 11 S. Ct. 441, 34 L. Ed. 1069; Brenham v. German American Bank, 144 U. S. 173, 12 S. Ct. 559, 36 L. Ed. 390; Brownsville v. Loague, 129 U. S. 493, 9 S. Ct. 327, 32 L. Ed. 780; Barnett v. Dennison, 145 U. S. 135, 12 S. Ct. 819, 36 L. Ed. 652; South Ottawa v. Perkins, 94 U. S. 260, 24 L. Ed. 154.

It is further objected that the records are not offered. This objection would be good if the matters sought to be shown as to the want of an election were an affirmative matter which appeared on the records, but where it is sought to establish the absence of a record, the testimony of a county official that he has searched the records and that inquired about does not appear is competent. 22 C. J. p. 1006, § 1282(b), note 55, and authorities there cited. Same, section 1283 (bb), and authorities under notes 60 and 61.

The bonds themselves show by whom they were issued. No other evidence as to this is necessary, as the signatures thereto are not denied.

It results that plaintiff is not entitled to a judgment against Obion county, but is entitled to judgment on the bonds for the amount delinquent, with interest thereon and attorney's fees, against Obion River drainage district No. 2, and against the delinquent individual landowners to the amount of the assessments against the particular tracts of land within the district, but for the satisfaction of the judgment plaintiff must look to said lands and the funds in the hands of the trustee collected from the assessments against the same.